**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| FRANK C. BRANDT, | : | |
| Plaintiff, | : | |
| | | Case No. 3:08cv00137 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

**I.   INTRODUCTION**

Plaintiff Frank Brandt dislocated his left shoulder in 1994 in an industrial accident. Over the ensuing years he had many left shoulder surgeries. In September 2003 he turned to the Social Security Administration for financial assistance by applying for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). He asserted in his applications that beginning on May 29, 2001, he became unable to work. (Tr. 86-88, 405-07).[2]

After initial administrative denials, his DIB/SSI applications – along with medical records and other documents – proceeded to a hearing before Administrative Law Judge (ALJ) Thomas R. McNichols, II. Plaintiff and a vocational expert testified during the

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2] Plaintiff previously applied for DIB and SSI in April 2002 (Tr. 69-71, 397-99), but his claims were denied initially and he did not seek further review. (Tr. 46-49, 400-04).

ALJ's hearing. (Tr. 419-71). In a later written decision, the ALJ concluded that Plaintiff's medical problems did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 24-36). The ALJ's non-disability determination and resulting denial of benefits became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), the administrative record, and the record as a whole.

Plaintiff seeks an Order remanding this case to the Social Security Administration for further proceedings, including a new hearing. The Commissioner seeks an Order affirming the ALJ's decision.

## II.    ADDITIONAL BACKGROUND

Plaintiff's age (37 years old) on the date of the ALJ's decision placed him in the category of a "younger person" for purposes of resolving his benefits applications. *See* 20 C.F.R. §§404.1563(c), 416.963(c).[3] He has an eighth grade or "limited" education. 20 C.F.R. §404.1564(b). He has worked as a delivery truck driver, newspaper deliverer, auto mechanic and a warehouse worker. (Tr. 122).

Plaintiff testified during the ALJ's hearing that he has had eight surgeries on his left shoulder, including fusion surgery. (Tr. 424). He was only able to lift his arm as far as chest level. He had constant left shoulder pain that comes and goes every day, which was helped by medication. (Tr. 424, 432). He said he did not pull, push or lift above his shoulder with his left arm, but could "comfortably" raise his left arm to breast level and "just below shoulder level," and could lift his left arm as high as his shoulder if necessary.

---

[3] The remaining citations to the Regulations will identify only the pertinent DIB Regulations, with full knowledge of the corresponding SSI Regulations. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

2

(Tr. 425, 445). He used his left hand to "grab something," and button/zip his clothes. (Tr. 425). He could grab a microphone that was ten inches away from him, but he stated it was painful to do so. (Tr. 446). He stated that he could probably lift some weight with his left arm, but he did not do any lifting. (Tr. 435).

As to his seizures, the last seizure was six months prior to the hearing, in January 2006. (Tr. 426). His wife told him that he lost consciousness with the seizure. He said that his seizures were controlled by medication. (Tr. 427). He said that, prior to January, he had seizures "maybe once or twice a month." (Tr. 434). Plaintiff testified that his doctor still did not want him to drive, take a bath, or get on high ladders. (Tr. 422, 429).

Plaintiff testified about his limited daily activities. He testified he had depression and did not want to do anything. (Tr. 431). He went shopping with his wife every now and then, watched TV, went to his son's football games, and visited socially. (Tr. 437, 439-40). He testified that he could shave his beard and play cards, but could not tuck in his shirt or put on a belt. (Tr. 447-48, 450-51).

Plaintiff estimated that he could walk a mile, stand for one hour and had unlimited sitting. (Tr. 434-35). He estimated that he could lift 10 or 20 pounds with his right arm, and could probably lift some weight with his left arm, but did not do that. (Tr. 435). He said he could not perform his past work as a cable worker because it involved too much heavy lifting. (Tr. 436).

Turning to the other evidence and other information in the administrative record, the parties have provided informative and detailed descriptions of that evidence. *See* Doc. #9 at 3, 5; Doc. #11 at 2-9. In light of this, and upon consideration of the complete administrative record, additional detailed discussion of the record would be unnecessarily duplicative, a general identification of the medical sources upon whom the parties rely will help frame further review.

Plaintiff has a history of traumatic left shoulder dislocation in 1994, with left shoulder surgeries for instability (Bankhart repairs) in July 1994, September 1995, and

December 1997. (Tr. 160-73). He had surgery for glenohumeral joint reconstruction, rotator cuff debridement, and chondroplasty in December 1998, performed by William Donahue, D.O. (Tr. 202-07). In July 2001 Dr. Donahue performed a glenohumeral joint reconstruction, capsulorrhaphy, acromioplasty, coracoacromial ligament resection, rotator cuff debridement, and bursectomy. (Tr. 196-201). In September 2001, Dr. Donahue performed left shoulder arthroplasty with modified Putti-Platt tendon repair. (Tr. 193-94).

Plaintiff underwent a consultative orthopedic evaluation by Aivars Vitols, D.O., on September 12, 2002. (Tr. 174-81). Plaintiff told Dr. Vitols that his shoulder popped "in and out" every day, but he was able to usually pop it back in at will. He complained of intermittent tingling in his fingers, and constant neck and shoulder soreness. Plaintiff's left arm was held in a dependent position. The left shoulder was lower than the right. There was flattening of the deltoid on the left and increased muscle tone of the left trapezius associated with pain to palpation. Plaintiff had limited and painful left shoulder motion, both active and passive. He had significant shoulder weakness graded at 3/5, 4/5 elbow strength, but he had full strength in his biceps, triceps and forearms, and normal upper extremity reflexes. Plaintiff had intact hand function. A left shoulder x-ray revealed significant widening of the acromiohumeral space, and anterior subluxation of the shoulder. Dr. Vitols performed manual muscle testing (Tr,. 179-81), noting that Plaintiff's left shoulder was "subluxed."[4] (Tr. 180). Dr. Vitols diagnosed chronic left shoulder dislocation, narcotic dependency and exogenous obesity. And he concluded, "Based on the foregoing clinical objective finding of this examination the claimant has absolutely no capability of using his left upper arm." (Tr. 181).

In October 2002 Robert A. Weisenburger, M.D. a state agency reviewing physician opined that Plaintiff could lift up to 35 pounds occasionally and 20 pounds

---

[4] The term "subluxation" is defined as a "partial or incomplete dislocation." Taber's Cyclopedic Medical Dictionary at p. 1991 (19th Ed. 2001).

frequently, but he could not push or pull with the left arm. Plaintiff was restricted from reaching with his left arm. Plaintiff had no limitations on handling, fingering, or feeling. His only postural limitation was a restriction against more than occasional balancing. (Tr. 182-86).

On March 27, 2004, Gary Hinzman, M.D., a state agency reviewing physician noted Plaintiff's primary diagnosis of left shoulder fusion due to chronic dislocation, secondary diagnosis of seizure disorder, and other alleged impairments of depression and right shoulder separation. Dr. Hinzman noted that a September 2003 x-ray showed intact left shoulder hardware. Plaintiff could abduct the left shoulder approximately 80 degrees and could forward flex 80 degrees. He could fully flex and extend the elbow and could place his hand in front of his face. Dr. Hinzman opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds. He could not operate hand controls with his left hand. He could never balance or stoop, but he could frequently climb, kneel, crouch and crawl. He could not reach overhead with the left arm. He had no limitations on handling, fingering, or feeling. (Tr. 334-39). Dr. Perencevich, another reviewing physician affirmed Dr. Hinzman's opinions. (Tr. 339).

### III.   ADMINISTRATIVE REVIEW
#### A.   "Disability" Defined and the Sequential Evaluation

The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986). A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v.*

*Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Tr. 23-31; *see also* 20 C.F.R. §§404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

### B. The ALJ's Decision

In the present case the ALJ found at Step 1 that Plaintiff has not engaged in substantial gainful activity since May 29, 2001. (Tr. 35).

At Step 2 the ALJ found that Plaintiff had the following severe impairments: "chronic left shoulder pain with limited range of motion attributed to arthritis status/post fusion, depression, and obesity." *Id*.

The ALJ determined at Step 3 that Plaintiff does not have an impairment or a combination of impairments that meet or equal one in the Listings. *Id*.

At Step 4 the ALJ found that Plaintiff had the Residual Functional Capacity to

perform a limited range of light work,[5] with a number of restrictions:

> [The claimant] is: (1) restricted from climbing ropes, ladders, and scaffolds, balancing, and fine manipulation with the left upper extremity; (2) limited to occasional gross manipulation with the left upper extremity; (3) limited to frequent stair climbing, stooping, kneeling, crouching, and crawling; (4) restricted from exposure to hazards; (5) restricted from work above shoulder level on the left; (6) limited to frequent, but not repetitive, use of hand controls on the left; (7) limited to work involving simple, one- or two-step tasks requiring little, if any, concentration; and (8) restricted from work involving public contact.

(Tr. 43). This assessment, along with the ALJ's findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a disability and thus not eligible for DIB or SSI. (Tr. 43-45).

## IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Judicial review for substantial evidence is deferential not *de novo*. *See Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record – if other

---

[5] The Regulations define light work as involving the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b).

substantial evidence supports the ALJ's findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Reviewing for substantial supporting evidence is not the stopping point of judicial analysis. Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria. *See Bowen*, 478 F.3d at 746. If the ALJ did not, the decision may not be upheld even when substantial evidence supports the ALJ's findings. *See id.* For example, a decision will not be upheld where the ALJ failed to apply the standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein). Through *Bowen* and other recent Sixth Circuit cases, an ALJ's failure to apply the correct legal criteria – at least when evaluating medical source opinions – mandates further judicial review for harmless error. *Bass II v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007); *see Bowen*, 478 F.3d at 747-49; *see also Wilson*, 378 F.3d at 547-49 (offering examples of possible *de minimis* errors). Consequently, if the ALJ erred by not applying the correct legal criteria but the error was harmless, the decision should be affirmed. *See Bass II*, 499 F.3d at 512 (and cases cited therein).

**V.    DISCUSSION**

    **A.    The Parties' Contentions**

Plaintiff primarily contends that the ALJ's failed to establish and appropriate Residual Functional Capacity because the evidence shows that after seven to eight left shoulder surgeries, his final surgery involved a total fusion of his left shoulder, fixing it in "'no more than 30 degrees of abduction, 30 degrees of flexion, and about 30 degrees of internal rotation....'" (Doc. #9 at 3 (quoting Tr. 217)). Plaintiff argues that, contrary to the ALJ's findings, "it defies logic that someone with a shoulder fixed at that severely limited range of motion ... could use his dominant left upper extremity for anything more than perhaps simple grasping at best." (Doc. #9 at 3). The ALJ therefore erred,

according to Plaintiff, by identifying greater left-shoulder abilities in his hypothetical questions to the vocational expert.

Plaintiff further contends that the ALJ erred by not precluding Plaintiff to work not requiring him, or a hypothetical worker, to reach beyond 6 to 10 inches. This constituted error, Plaintiff reasons, because substantial evidence – Dr. Vitols' opinions and Plaintiff's own testimony – supported such a limitation. Plaintiff emphasizes that the vocational expert acknowledged that no jobs would be available to a hypothetical person with this restriction.

Plaintiff lastly contends that the ALJ erred by not finding his seizure disorder to constitute a severe impairment and a Listing-level impairment.

The Commissioner contends that certain evidence fails to support Plaintiff's assertion that his left shoulder is limited to 30 degrees of abduction, 30 degrees of flexion, and 30 degrees of internal rotation, including his own testimony the at he could comfortably raise his arm to breast level and to just below shoulder level and could lift his left arm as high as his shoulder, if necessary. (Doc. #11 at 12).

The Commissioner also argues that Dr. Vitols' opinion was inconsistent with Plaintiff's own testimony that he could raise his left arm comfortably to breast level and just below shoulder level. The Commissioner asserts that certain aspects of Dr. Vitols' opinions – finding Plaintiff able to grasp, pinch, and finely manipulate – support the ALJ's assessment of his Residual Function Capacity. The Commissioner maintains that Dr. Vitols' opinions about these abilities were consistent with the opinions of Drs. Weisenburger, Hinzman, and Perencevich, the state agency physicians who reviewed the record. And the Commissioner finds no merit in Plaintiff's focus on the absence of jobs available to a person limited to jobs not requiring reaching 6 to 10 inches from the body because the vocational expert testified that this limitation did not preclude photocopy machine operator jobs and other jobs.

As to the seizure disorder, the Commissioner argues that the ALJ correctly

incorporated any limitations caused by a seizure by precluding Plaintiff from performing work with no climbing ladders, ropes, or scaffolds and work with no exposure to hazards.

>   B.    <u>Analysis</u>

The ALJ reviewed and summarized Plaintiff's medical records as well as the opinions provided by, among others, examining physician Dr. Vitols, and record-reviewing physicians Dr. Weisenburger, Dr. Hinzman, and Dr. Perencevich.  (Tr. 26-29). The ALJ, however, did not discuss at any point in his decision what weight, if any, he placed on the opinions provided by these medical sources, and the ALJ provided no reason for rejecting Dr. Vitols' opinion that Plaintiff "has absolutely no capability of using his left upper arm" (Tr. 181) and no reason for accepting the opinions Drs. Weisenburger, Hinzman, and Perencevich.

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p, 1996 WL 374180 at *2.  Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source. *See id*. at *2-*3.  The Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. §404.1527(b).  To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in §404.1527(d) including, at a minium, the factors of supportability, consistency, and specialization.  *See* 20 C.F.R. §404.1572(f); *see also* Ruling 96-6p, 1996 WL 374180  at *2-*3.

The ALJ evaluated the opinions of Drs. Vitols, Weisenburger, Hinzman, and Perencevich as follows:

> The claimant has a history of multiple shoulder surgeries, most recently in 2003. He is recovered from the acute nature of his shoulder injury, and residuals affecting functioning are accommodated in his RFC. Other than his surgeries and periods of recovery, the claimant's level of

> treatment has generally involved conservative measures which are not indicative of total disability. No treating or examining source has indicated that the claimant is totally disabled from all work activity, and a residual functional capacity for reduced range of light work is consistent with the reports of those sources, and with the opinions of the reviewing State Agency physicians. In view of the evidence of record, I find that the claimant may have 'severe,' impairments, but such impairments do not render him 'disabled' from all work activity. In that respect, the claimant's allegations cannot be accepted.

(Tr. 33). Nothing in this discussion, or elsewhere in the ALJ's decision, reveals that the ALJ applied any of the required regulatory factors to the opinions of Drs. Vitols, Weisenburger, Hinzman, and Perencevich. This is particularly problematic as to Dr. Vitols' opinions that Plaintiff has "absolutely no capability of using his left upper arm...." (Tr. 177), because the ALJ's concluded that Plaintiff was not so completely restricted from using his left upper arm. *See* Tr. 35. This constituted an error of law, particularly because the plain language of Regulations emphasizes the mandatory nature of the factor-based weighing by reiterating it no less than three times. *See* 20 C.F.R. §416.927(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); 20 C.F.R. §416.927(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §416.927(f)(iii) (same as to medical experts' opinions).

In addition, not only was the ALJ's omission of the required weighing contrary to the Regulations, *see* 20 C.F.R. §416.927(f)(ii), it was contrary to the Commissioner's Ruling 96-6p, which provides:

> [T]he opinions of State agency medical and psychological consultants ... can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Councils levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other facts that could have a bearing on the weight to which an opinion is

>entitled, including any specialization of the State agency medical or psychological consultant.

Social Security Ruling 96-6p, 1996 WL 374180 at *3.

In addition, as noted above, at the Ohio BDD's request, Dr. Weisenburger reviewed the record in October 2002. He concluded that Plaintiff would be limited to lifting up to 20 pounds frequently and 35 pounds occasionally, but could not push or pull with the left arm. He had a limited ability to reach with the left arm, but no limitations on handling, fingering or feeling. Dr. Weisenburger opined Plaintiff had a postural restriction against more than occasional balancing. (Tr. 183-86). Dr. Hinzman reviewed the record in March 2004 and concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, but he could not operate hand controls with his left hand. Dr. Hinzman further opined that Plaintiff could never balance or stoop, but he could frequently climb, kneel, crouch and crawl. He could not reach overhead with the left arm, but did not have any limitations on handling, fingering or feeling. (Tr. 335-39) Dr. Perencevich subsequently reviewed the record and agreed with Dr. Hinzman's conclusions. (Tr. 339). The ALJ's decision reveals no analysis as to their opinions as well. This was contrary to the Regulations.

There remains the possibility that the ALJ's errors were harmless, *see Bowen*, 478 F.3d at 747-49, an issue neither party specifically addresses. The Commissioner, finding no error in the ALJ's decision, argues that it was reasonable for the ALJ to accept a state agency physician's opinion that is supported by the objective findings and consistent with the other evidence of record. The Commissioner contends that the ALJ's finding concerning Plaintiff's ability to use his left hand was well-supported by, and consistent with, the opinions of Drs. Vitols, Weisenburger, Hinzman and Perencevich. *See* Doc. #11 at 14. The harmless error issue, then, is whether the ALJ's decision, the evidence of record, or the Commissioner's arguments provide a sufficient basis for overlooking the ALJ's errors. *See Bowen*, 478 F.3d at 747-48; *Wilson*, 378 F.3d at 546-47.

It is highly doubtful that the Commissioner's *post-hoc* application of the required regulatory factors can be the sole basis to affirm an ALJ's decision when the ALJ has failed to weigh the treating and non-treating medical sources' opinions as required by the Regulations. "A court cannot excuse the denial of a mandatory procedural requirement protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. '[A] procedural error is not made harmless simply because the [aggrieved party] appears to have had little chance of success on the merits anyway.' To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with §1527(d)(2), would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action ... found to be ... without observance of procedure required by law.'" *Wilson*, 378 F.3d at 546 (internal citations omitted).

The ALJ's error when rejecting Drs. Vitols' opinions was not harmless because Dr. Vitols submitted a detailed report containing references to his examination findings as well as an explanation for his opinions. Similarly, a review of reports provided by Drs. Weisenburger, Hinzman, and Perencevich do not reveal that their opinions were "so patently deficient that the Commissioner could not possibly credit" them... *Wilson*, 378 F.3d at 547. In addition, although the ALJ's assessment of Plaintiff's Residual Functional Capacity placed some restrictions on his ability to perform work activities with his left upper extremity, this did not render his errors harmless because the ALJ's assessment did not preclude Plaintiff from performing absolutely no work above the left shoulder level, as Dr. Vitols believed. The vocational expert, moreover, was not asked to consider a hypothetical person as limited as Dr. Vitols believed, and consequently, the vocational expert's testimony did not reveal the existence of jobs such a person could perform. *See*

Tr. 460-70.

Accordingly, the ALJ erred by not applying the correct legal criteria to evaluate the pertinent medical source opinions and this error was not harmless.[6]

## VI.   REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above.  On remand, the ALJ should be directed to (1) re-evaluate the medical source opinions of record under the legal criteria applicable under the Commissioner's Regulation and Rulings and as mandated by case law; and (2) review Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and thus eligible for DIB and/or SSI.

---

[6] In light of the above review, and the resulting need for remand of this case, an analysis of the parties' remaining arguments, including those focusing on the hypothetical questions and the vocational expert's testimony, as well as those related to Plaintiff's seizure disorder, is unwarranted.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Frank Brandt was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.


July 22, 2009

                                            s/Sharon L. Ovington
                                              Sharon L. Ovington
                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

  Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).